**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

SOB, INC., a Minnesota corporation, d/b/a "Sugar Daddy's"; AMY CHENOWETH; SHANNON WIBORG; KATHRYN HASKINS; MARK VAN GELDER; and MARY CLIFFORD VAN GELDER,

Plaintiffs,

vs.

COUNTY OF BENTON,

Defendant.

Civil No. 01-CV-1239 DDA/RLE

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER FOR JUDGMENT**

Randall Tigue Law Office, P.A., by RANDALL D.B. TIGUE, Minneapolis, Minnesota, appeared on behalf of Plaintiffs.

Ratwik, Roszak & Maloney, P.A., by SCOTT T. ANDERSON and AMY E. MACE, Minneapolis, Minnesota, appeared on behalf of Defendant.

This matter was before the Court on September 11, 2001, for a combined hearing pursuant to Fed.R.Civ.P. 65(a)(2) on Plaintiffs' application for a preliminary injunction and a trial on the merits. Based on the arguments and memoranda of counsel, the evidence in the record, and the applicable law, the Court makes the following

**FINDINGS OF FACT**

1. Defendant County of Benton (hereinafter "Benton County") is a political subdivision of the State of Minnesota.

2. A business called "The King's Inn" opened in Benton County in September 1993. The King's Inn offered live, nude dance entertainment to the public.

3. Shortly after The King's Inn opened, Benton County unsuccessfully sought to enforce

FILED NOV 05 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD NOV 05 2001
DEPUTY CLERK

a conditional use permit requirement against The King's Inn[1]. Benton County in July 1994 then passed a zoning ordinance limiting the location of sexually-oriented businesses[2]. In enacting the zoning ordinance, the Benton County Commissioners considered studies of the effects of sexually-oriented businesses on the neighborhoods surrounding those businesses. Those studies were conducted in St. Paul and Rochester, Minnesota; Los Angeles, California; Phoenix, Arizona; Adams County, Colorado; and Austin, Texas. The Benton County Commissioners also considered a report the Minnesota Attorney General's Office had prepared on the same subject. Those studies and reports suggest, in varying degrees, that sexually-oriented businesses may cause an increase in crime rates, a decrease in property values, and other adverse secondary effects in the areas surrounding those businesses.

4. Plaintiff SOB, Inc., is a Minnesota corporation. In June 2001, SOB, Inc., opened a business called "Sugar Daddy's" in a location available for sexually-oriented businesses under Benton County's zoning scheme. Sugar Daddy's offers live, nude dance entertainment to the public. Plaintiffs Amy Chenoweth, Shannon Wiborg, and Kathryn Haskins are Minnesota residents who work as exotic dancers at Sugar Daddy's and who perform in the nude.

5. Plaintiffs Mark and Mary Clifford Van Gelder are a married couple and are Minnesota residents.

6. Within a week of the opening of Sugar Daddy's, the Benton County Attorney, in response to a request from the Benton County Commissioners for additional means of regulating sexually-oriented businesses, presented the Benton County Commissioners with a draft

---

[1] Another judge in this District granted a preliminary injunction against enforcement of the conditional use permit requirement, Bukaka, Inc. v. County of Benton, 852 F. Supp. 807 (D. Minn. 1993), and later imposed a permanent injunction based on the lack of procedural safeguards in the county code. Mga Susu, Inc. v. County of Benton, 853 F. Supp. 1147 (D. Minn. 1994).

[2] The Minnesota courts have upheld Benton County's zoning scheme against a First Amendment challenge. Kismet Investors, Inc. v. County of Benton, 617 N.W.2d 85 (Minn.Ct.App.), review denied (Minn. Nov. 15, 2000), pet. for cert. filed, 69 U.S.L.W. 3576 (Feb. 13, 2001) (No. 00-1305).

ordinance prohibiting "public indecency." The Benton County Attorney at the same time provided the Benton County Commissioners with copies of the studies relied upon in enacting the earlier zoning ordinance along with copies of similar studies conducted in New York, New York; St. Croix County, Wisconsin, and St. Paul, Minnesota. The additional studies reach conclusions consistent with those of the studies Benton County considered in enacting the earlier zoning ordinance.

7. The Benton County Commissioners held a public hearing on the proposed public indecency ordinance on July 3, 2001. At that hearing, the Benton County Commissioners received written and oral comments from both proponents and opponents of the proposed ordinance. Plaintiff Mark Van Gelder presented the Benton County Commissioners with a study disputing the link between sexually-oriented businesses and adverse secondary effects. Van Gelder also presented evidence suggesting that the businesses offering live, nude entertainment in Benton County had no demonstrable adverse effects upon local crime rates or property values.

8. The Benton County Commissioners adopted the proposed ordinance as Benton County Ordinance 332 (hereinafter "the Ordinance") immediately following the public hearing by a vote of 4-1. A copy of the Ordinance is attached to Plaintiffs' Complaint and is part of the record. The Ordinance as adopted prohibits a person from appearing in a state of nudity in public, Ordinance Section 4.A., and from fondling his or her own genitals or the genitals of another person in public. Id. at Section 4.B.,C.

9. The presence of businesses offering live, nude entertainment in Benton County has not adversely affected property values or increased crime in the areas near those businesses.

10. Benton County's motivation in adopting the Ordinance was to disrupt or eliminate businesses in Benton County that offer live, nude entertainment.

11. To the extent that any of the Court's conclusions of law are deemed to be findings of fact, those findings are incorporated herein by reference.

## CONCLUSIONS OF LAW

1. The Supreme Court has recognized that the First Amendment protects nude erotic dancing as a form of artistic expression. See City of Erie v. Pap's A.M., 529 U.S. 277, 285 (2000) (plurality opinion) (citing cases). A majority of the Supreme Court also has recognized that legislative prohibitions of public nudity receive intermediate judicial scrutiny pursuant to the test articulated in United States v. O'Brien, 391 U.S. 367 (1968), because such prohibitions may interfere incidentally with protected expression. Pap's, 529 U.S. at 289 (four-justice plurality); id. at 310 (Souter, J., concurring in part and dissenting in part). An ordinance passes muster under O'Brien if the ordinance is a valid exercise of the government's police power, the ordinance furthers an important or substantial governmental interest, that interest is unrelated to the suppression of free expression, and the incidental restriction on expression is no greater than necessary to further that interest. 391 U.S. at 376-77.

2. Plaintiffs do not dispute that the enactment of the Ordinance was a valid exercise of Benton County's lawful authority.

3. The Supreme Court's decision in Pap's does not call into question Benton County's stated justification for enacting the Ordinance, which is to eliminate the adverse secondary effects of sexually-oriented businesses. Plaintiffs contend that Benton County's interest in eliminating the adverse secondary effects of nude dancing is not "important or substantial" under O'Brien because a majority of the Supreme Court has rejected that position. Some Justices in Pap's indeed were skeptical that requiring dancers to wear minimal amounts of clothing would have an appreciable effect upon the secondary effects of sexually-oriented businesses that offered nude dancing. 529 U.S. at 310 (Scalia, J., concurring in the judgment); id. at 323 (Stevens, J., dissenting). Five Justices in Pap's, however, agreed as a general matter that a local government's interest in combating the adverse secondary effects of sexually-oriented businesses is "important or substantial" under O'Brien. See Nightclub Mgmt., Ltd. v. City of Cannon Falls, 95 F.Supp.2d 1027, 1041 n.17 (D. Minn. 2000) (discussing the treatment of secondary effects in Pap's). The Eighth Circuit also has held affirmatively that such an interest passes muster under O'Brien,

Farkas v. Miller, 151 F.3d 900, 905 (8th Cir. 1998), and recently reaffirmed the viability of the secondary effects doctrine in the context of zoning ordinances. BZAPS, Inc. v. City of Mankato, No. 00-3214, 2001 WL 1203229, at *2 (8th Cir. Oct. 12, 2001). The Ordinance accordingly furthers an important or substantial governmental interest.

4. Benton County's motivation to suppress constitutionally protected expression does not raise the level of judicial scrutiny applied to the Ordinance. As Plaintiffs argue, the record amply demonstrates that Benton County passed the Ordinance in order to eliminate nude dancing at Sugar Daddy's and similar establishments[3]. The Benton County Attorney proposed the Ordinance as a constitutionally acceptable means of regulating sexually-oriented businesses, not as a general prohibition of public indecency. The record contains no complaints to the Benton County Commissioners about campus streakers, topless vendors, nude sunbathers, or any form of public nudity other than nude dancing. The comments at the public hearing, both for and against the Ordinance, focus almost entirely upon the issue of nude dancing. In light of those facts, it is disingenuous to suggest that an abstract concern with nonexistent adverse secondary effects of sexually-oriented businesses, rather than concrete complaints about the moral value of nude dancing, motivated Benton County to pass the Ordinance. Contrary to Plaintiffs' argument, however, Benton County's motivation is not dispositive. Although in most instances laws intended to target protected expression receive heightened scrutiny, laws targeting nude dancing receive intermediate scrutiny so long as the court can identify "a current governmental interest in the service of which the statute ... may be constitutional." Farkas, 151 F.3d at 905 (quoting Barnes v. Glen Theatre, Inc., 501 U.S. 560, 582 (1991) (Souter, J., concurring) (ellipsis in

---

[3] Benton County has offered affidavits from some Benton County Commissioners in an effort to explain the reasons underlying passage of the Ordinance. Plaintiffs objected to this evidence on the ground that affidavits from individual Commissioners are not competent to prove motivation for the entire legislative body. Most federal courts, however, have held in similar contexts that self-serving evidence from individual legislators is admissible but is entitled to little weight. See, e.g., Mitchell v. Comm'n on Adult Entm't Establishments of the State of Del., 10 F.3d 123, 135 (3rd Cir. 1993) (citing cases). The Court accordingly overrules Plaintiff' objection, and the affidavits of the Commissioners are admitted as part of the evidentiary record.

original)). See also Schultz v. City of Cumberland, 228 F.3d 831, 841 (7th Cir. 2000) (holding that general prohibitions of public nudity receive intermediate scrutiny when the "government offers as its legislative justification the suppression of public nudity's negative secondary effects"). Because Benton County has such an interest, the Ordinance is "unrelated to the suppression of free expression." Farkas, 151 F.3d at 905 (citation omitted).

5. Benton County also has met its burden of establishing a factual basis for its interest in combating the adverse secondary effects of nude dancing. Plaintiffs point out, correctly, that Benton County failed to establish more than a general concern with adverse secondary effects and that Benton County ignored evidence that nude dancing in fact had caused no local adverse secondary effects. Courts in other jurisdictions have accepted versions of these arguments in striking down adult entertainment ordinances. The Ninth Circuit, for example, has held that a city cannot constitutionally increase restrictions on sexually-oriented businesses simply by showing that "adult establishments as a class cause the secondary effects the regulation is aimed at preventing." Alameda Books, Inc. v. City of Los Angeles, 222 F.3d 719, 727 (9th Cir. 2000), cert. granted, 121 S.Ct. 1223 (2001). The Eleventh Circuit similarly has held that a county constitutionally cannot reject its own study finding no adverse secondary effects within its boundaries "in favor of studies from different cities and different time periods" that reach different conclusions. Flanigan's Enters., Inc. v. Fulton County, 242 F.3d 976, 987 (11th Cir.), pet. for cert. filed, 70 U.S.L.W. 3091 (Jul. 23, 2001) (No. 01-144). The concern underlying those cases, a concern the Plaintiffs share, is that without a meaningful evidentiary burden local governments effectively may eliminate protected expression simply through a ritualistic invocation of dubious studies. Although that concern is reasonable, it again is not in accord with the rule in this jurisdiction. The Eighth Circuit has upheld adult entertainment ordinances passed in the absence of a showing of local adverse secondary effects, BZAPS, 2001 WL 1203229, at *2, and in the absence of any showing whatsoever that the government intended to combat adverse secondary effects. Farkas, 151 F.3d at 905. See also ILQ Invs., Inc. v. City of Rochester, 25 F.3d 1413, 1418 (8th Cir.) (holding that an adult entertainment ordinance may be

justified "by studies of the secondary effects of reasonably similar businesses" in other areas), cert. denied, 513 U.S. 1017 (1994). The studies Benton County considered in passing the Ordinance are sufficient to meet Benton County's evidentiary burden under that relatively lenient standard.

6. The Ordinance is not unconstitutionally overbroad. The First Amendment overbreadth doctrine allows challenges to legislative prohibitions on speech or conduct on the ground that those prohibitions may have a chilling effect upon the protected expression of persons other than the plaintiff. Bd. of Airport Comm'rs v. Jews for Jesus, Inc., 482 U.S. 569, 574 (1987). Plaintiffs here recognize that the Ordinance contains an exemption[4] applicable to "any theatrical production performed in a theater by a professional or amateur theatrical company which has serious artistic merit." Ordinance Section 5. Plaintiffs, however, also point out that the exemption does not apply to the Ordinance's prohibition of genital fondling, Ordinance Section 4 B, C, and that such a prohibition could be construed as applying to scenes in mainstream theatrical performances. The Court agrees that Benton County may not proscribe particular gestures, including gestures expressing a message of eroticism, in the context of a theatrical performance. See Schultz v. City of Cumberland, 228 F.3d 831, 847 (7th Cir. 2000) (holding that a city may not prohibit sexually explicit dance movements as a means of regulating sexually-oriented businesses). But to hold the Ordinance infirm on the ground of overbreadth, the overbreadth "must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." Veneklase v. City of Fargo, 248 F.3d 738, 747 (8th Cir. 2001) (en banc) (quoting Broadrick v. Oklahoma, 413 U.S. 601, 615 (1973)), cert. denied, 69 U.S.L.W. 3749 (U.S. Oct. 1, 2001) (No. 00-1712). An ordinance also is not overbroad if it is amenable to a

---

[4] At least one court has held that a prohibition on public nudity without a so-called "theatrical exemption" was unconstitutionally overbroad because the ordinance on its face prohibited "live performances with serious literary, artistic, or political value." Triplett Grille, Inc. v. City of Akron, 40 F.3d 129, 136 (6th Cir. 1994). A theatrical exemption substantially similar to the exemption in the Ordinance, however, insulates a prohibition of public nudity from an attack based on overbreadth. Farkas, 151 F.3d at 905.

limiting construction that would preserve the ordinance's constitutionality. Broadrick, 413 U.S. at 613. The number of theatrical productions to which the prohibition of genital fondling would apply is extremely limited, and courts in later cases could construe the Ordinance in such a way as to preserve protected expression should the occasion arise. The Ordinance's definition of "public place," Ordinance Section 3 C., which according to Plaintiffs could be interpreted as extending to private hotel rooms, similarly is subject to a limiting construction and therefore is not substantially overbroad. More specific challenges to the Ordinance on the grounds Plaintiffs raise are best reserved for decision on a case-by-case basis.

7. Finally, Plaintiffs are entitled to an injunction forbidding enforcement of the Ordinance by means of custodial arrest. Plaintiffs argue that the custodial arrest of erotic dancers constitutes an unlawful prior restraint of protected expression. Prior restraints on expressive conduct are presumptively invalid, Douglas v. Brownell, 88 F.3d 1511, 1521 (8th Cir. 1996), and are to be prohibited if state officials retain "too much discretion to discriminate against disfavored speech or unpopular speakers." Steele v. City of Bemidji, 257 F.3d 902, 907 (8th Cir. 2001). Federal district courts are not in accord concerning whether the arrest of an erotic dancer following an allegedly illegal performance constitutes an unlawful prior restraint of expression. Compare, e.g., Admiral Theatre v. City of Chicago, 832 F.Supp. 1195, 1204 (N.D. Ill. 1993) (holding that nude dancers who alleged that they were arrested after performing had stated a claim for unlawful prior restraint) with Kew v. Senter, 416 F.Supp. 1101, 1105-06 (N.D. Tex. 1976) (holding that arresting nude dancers after completion of performance was not an unlawful prior restraint). Benton County contends that enforcing the Ordinance cannot present a prior restraint problem because officers enforcing the Ordinance need little discretion to determine whether a dancer is performing in the nude. Given that the theatrical exception in the Ordinance may apply to some erotic dance performances, however, officers enforcing the Ordinance also must determine whether such a performance has "serious artistic merit," Ordinance Section 5, and the scope of that inquiry is far from clear. The merits of an expressive performance, insofar as a court can determine them, turn upon the particular facts of each performance, and arresting

the performer necessarily places a prior restraint on later performances.

8. To the extent that any of the Court's findings of fact are deemed to be conclusions of law, those conclusions are incorporated herein by reference.

For the foregoing reasons, the Court makes the following

**ORDER**

1. The Clerk of Court shall enter judgment as follows:

> IT IS ORDERED, ADJUDGED, and DECREED that Plaintiffs' motion for a permanent injunction prohibiting enforcement of Benton County Ordinance 332 in its entirety is DENIED, and that claim is DISMISSED with prejudice.

2. Plaintiffs' motion for a permanent injunction prohibiting Benton County from enforcing Benton County Ordinance 332 by means of custodial arrest is GRANTED, and an injunction shall issue forthwith in the form attached without the filing of security therefor.

Dated: November 5, 2001

DONALD D. ALSOP, Senior District Judge
United States District Court

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

SOB, INC., a Minnesota corporation, d/b/a "Sugar Daddy's"; AMY CHENOWETH; SHANNON WIBORG; KATHRYN HASKINS; MARK VAN GELDER; and MARY CLIFFORD VAN GELDER,

Plaintiffs,

vs.

COUNTY OF BENTON,

Defendant.

Civil No. 01-CV-1239 DDA/RLE

**PERMANENT INJUNCTION**

Defendant County of Benton, along with its officers, agents, servants, employees, and attorneys, is hereby PERMANENTLY ENJOINED from using custodial arrest as a means of enforcing Benton County Ordinance 332 against Plaintiffs or any other person.

Dated: November ____, 2001

_______________________________

DONALD D. ALSOP, Senior District Judge
United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.